UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY

IN RE:      AKSM Holdings, Inc.
            Debtor                                    Case No. 09-51148
                                                      Chapter 11

**APPLICATION TO EMPLOY AND RETAIN
GENERAL CAPITAL PARTNERS LLC AS
EXCLUSIVE SALES AND MARKETING AGENT FOR
THE DEBTOR PURSUANT TO 11 U.S.C. §§327(a), 328(a) AND 1107
AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 2014(a)**

Debtor, AKSM Holdings, Inc. (hereinafter "Debtor"), hereby moves the Court for entry of an order authorizing the debtor to employ and retain General Capital Partners LLC ("GCP") as exclusive sales and marketing agent pursuant to Sections 327(a), 328(a) and 1107 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In support hereof, the debtor respectfully represents upon information and belief, as follows:

## JURISDICTION

1.    This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

2.    The statutory bases for the relief requested herein are §§327(a), 328(a) and 1107 of the Bankruptcy Code and Bankruptcy Rule 2014(a).

## BACKGROUND

3.    On October 1, 2009 (the "Petition Date"), AKSM Holdings, Inc. ("AKSM") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

4. The debtor continues in possession of its property and has continued to operate and manage its business as debtor in possession pursuant to §§1107(a) and 1108 of the Bankruptcy Code.

5. No trustee, examiner or committee has been appointed in the debtor's Chapter 11 case.

6. AKSM Holdings, Inc. is the holding company for Aluma-Kraft, Inc., Aluma-Kraft Sales, Inc. and ViWinTech, Inc. The Aluma-Kraft companies were engaged in the manufacture and distribution of windows and distribution of various other building materials. The distribution part of the business was not profitable and the approximately twenty distribution centers were closed in 2008-09. The company sold the Aluma-Kraft name and now exclusively produces windows under the name "ViWinTech."

The manufacturing part of the business has historically been profitable. Founded in the early 1950s, it has remained a family owned business and currently employs approximately 130 persons. The debtor's first choice is to obtain post confirmation financing and continue as a viable entity. However, debtor believes that it is prudent also to pursue a plan of selling the business as a going concern, to protect the employees' jobs and to maximize a return to the debtor's creditors.

**RELIEF REQUESTED**

7. The debtor seeks to retain and employ GCP as their exclusive sales and marketing agent in this Chapter 11 case on the terms set forth herein pursuant to §327(a) of the Bankruptcy Code, with GCP's fee structure to be approved pursuant to §328(a) of the Bankruptcy Code. Subject to Court approval, the debtor has executed a retention agreement dated January 20, 2010 (the "Retention Agreement"), pursuant to which GCP

2

will provide services, as set forth in the Retention Agreement and summarized below. A true and correct copy of the Retention Agreement is attached hereto as Exhibit "A." The terms and conditions of the Retention Agreement were negotiated between the debtor and GCP in good faith, at arm's length, and reflect the parties' mutual agreement as to the substantial efforts that will be required in this retention and the compensation to be provided in connection therewith.

## GCP'S QUALIFICATIONS

8. GCP is uniquely qualified to advise and to assist the debtor in connection with its strategic alternatives in this Chapter 11 case. GCP is an investment and advisory firm with expertise in mergers and acquisitions, capital raising, restructurings and other strategic advisory services. GCP's professionals have extensive experience in, among other things, assisting a debtor to obtain D.I.P. and post confirmation financing for continued operations, or sales under §363 of the Bankruptcy Code. GCP is well qualified to provide the services required by the debtor.

## GCP'S DISINTERESTEDNESS

9. To the best of the debtor's knowledge, information and belief, and based upon the Affidavit of J. Gregory Barrow (the "Barrow Affidavit") (attached hereto as Exhibit "B"), GCP is a "disinterested person" as that term is defined in §101(14) of the Bankruptcy Code.

10. As described in detail in the Barrow Affidavit, GCP, among other things, searched its client databases to determine whether it represents, or has represented, certain of the debtor's creditors or other parties in interest in these proceedings, and/or matters wholly unrelated to these proceedings. Due to the size of GCP and the number of creditors and other parties in interest involved in this case, GCP may have representative certain of

3

the debtor's creditors or other parties in interest in matters wholly unrelated to this Chapter 11 case. Except as may be described in the Barrow Affidavit, GCP does not, to its knowledge, represent any party with an interest materially adverse to the debtor or its estate.

11. If any new facts or relationships are discovered, GCP will supplement its disclosure.

## SERVICES TO BE PROVIDED BY GCP

12. Pursuant to the Retention Agreement, GCP, among other things, will prepare a program which will include seeking parties interested in financing the debtor's assets through a plan of reorganization or acquiring the debtor's assets. In connection with a Transaction, as that term is defined in the Retention Agreement, and as requested by the debtor, GCP will:

(a) Actively solicit lenders to provide debtor with post-confirmation financing to allow debtor to continue in business;

(b) Market the debtor's assets which marketing activities may include the use of newspaper, magazines and journal advertising, conducting a pre-363 sale bidders conference or such other methods as may be appropriate;

(c) Prepare electronic mails, website listings, advertising letters, fliers and/or similar sale materials which would include information regarding the sale of the debtor's assets;

(d) Endeavor to locate who may have an interest in acquiring the debtor's assets;

(e) Circulate materials to interested parties regarding the debtor's assets, after the execution of confidentiality documents with interested parties;

(f) As necessary and requested, advise the debtor as to the setup and execution of any sale of the debtor's assets outside the ordinary course of business; and

(g) Communicate regularly with the debtor and interested parties with respect to the status of services provided by GCP.

13. The investment banking services that GCP will provide to the debtor are necessary to enable the debtor to maximize the value of its estate and to reorganize successfully. The debtor believes that the services will not duplicate the services that, subject to this Court entering or having entered appropriate orders, other professionals may provide to the debtor in this Chapter 11 case.

## TERMS OF GCP'S RETENTION AND COMPENSATION

14. The terms of the Retention Agreement shall be, except as set forth in the Retention Agreement, beginning as of January 20, 2010 (the "Effective Date") and continuing under the latter of (i) one hundred eighty (180) days after the Effective Date, (ii) the date on which an order is entered by the Court confirming a plan of reorganization or (iii) the date on which an order is entered by the Bankruptcy Court dismissing the debtor's Chapter 11 case.

15. Subject to the Court's approval, and in accordance with §328(a) of the Bankruptcy Code, GCP will be paid under the terms of the Retention Agreement as follows:

Monthly Fee Schedule:

The debtor will pay monthly fees to GCP, due upon the Effective Date and each 30 days thereafter, as follows:

Month 1: $25,000.00
Month 2: $15,000.00
Month 3: $10,000.00

GCP reserves the right to negotiate an extended monthly fee upon agreement with the debtor and approval by the Court.

The monthly fee will be credited against any Transaction Fee or Advisory Fee.

Transaction Fee:

GCP shall receive a fee for a Transaction with a Gross Value of:

- 6% up to $2,000,000 plus;
- 5% between $2,000,001 and $4,000,000 plus;
- 4% between $4,000,001 and $6,000,000 plus;
- 3% between $6,000,001 and $8,000,000 plus;
- 2% between $8,000,001 and $10,000,000 plus;
- 1% above $10,000,000.

16. <u>Previously Identified Parties</u>. Prior to the Effective Date, certain parties were identified as potential purchasers or financiers (collectively they are "Previously Identified Parties"; each is a "Previously Identified Party"). The Previously Identified Parties are listed in an attachment to Exhibit "A." In the event that any of the Previously Identified Parties completes a transaction in consideration for services rendered, GCP shall receive a Transaction Fee calculated as 50.0% half, of the Transaction Fee subject to Section 15.

17. <u>Fee for Transactions Involving Solely Credit Bids</u>. In the event that the debtor closes a Transaction, the consideration for which is solely a credit bid by a secured creditor of the debtor, pursuant to 11 U.S.C. §363(k) of the Bankruptcy Code, then GCP shall not receive a Transaction Fee but rather shall receive an Advisory Fee of $175,000 plus expenses, payable as an administrative claim in the Chapter 11 case.

18. <u>Fee for a Confirmed Plan of Reorganization</u>. In the event that the debtor confirms a Plan of Reorganization as a result of efforts to locate and secure alternative financing, then GCP shall not receive a Transaction Fee but rather shall receive an Advisory Fee of $200,000 plus expenses, payable as an administrative claim in the Chapter 11 case.

19. In addition, the debtor will reimburse GCP for all out-of-pocket expenses reasonably incurred up to a cap of $25,000.00.

20. The debtor believes that the fee structure is comparable to compensation generally charged by investment banking firms of similar stature for comparable engagements, both in and out of bankruptcy. In addition, the debtor believes that the ultimate payout that could be received by GCP in the event that it is successful in closing a Transaction is reasonable and comports with the fees charged in the market for such services.

21. GCP intends to apply to the Court for final allowance of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules of this Court, any guidelines provided by the United States Trustee, and pursuant to any additional procedures that may be established by the Court in this case; <u>provided that</u> the approval of GCP's fees and expenses in this case will be subject only to the standards contained in §328(a) of the Bankruptcy Code. Since the payment of any Transaction Fee will be made based upon such a Transaction actually occurring and the amount of such fee will be determined pursuant to the terms set forth in the Retention Agreement, GCP will not be submitting time records in support of its fee application as it relates to the Monthly Fee, Transaction Fee or Advisory Fee.

## **BASIS FOR RELIEF REQUESTED**

22. The debtor seeks approval of GCP's retention under §327(a) of the Bankruptcy Code and approval of the compensation structure as set forth in Paragraphs 15 through 19 of this Application (the "Fee Structure") pursuant to §328(a) of the Bankruptcy Code.

Section 328(a) provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a profession person under section 327. . .on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis." 11 U.S.C. §328(a). Section 328(a) therefore permits the Court to approve the Fee Structure outlined herein and described in more detail in the Retention Agreement.

23. Section 328 of the Bankruptcy Code permits the compensation of professionals, including investment bankers and financial advisors, on more flexible terms that reflect the nature of their services and market conditions.

24. The terms and conditions of the Retention Agreement were negotiated by the debtor and GCP at arm's length and in good faith. The debtor respectfully submits that the provisions contained in the Retention Agreement, viewed in conjunction with the other terms of GCP's proposed retention, are reasonable and in the best interests of the debtor, its estate and creditors.

25. The debtor believes that the Fee Structure is fair and reasonable and should be approved under §328(a) of the Bankruptcy Code. The Fee Structure appropriately reflects the nature of the services to be provided by GCP and the fee structures typically utilized by GCP and other investment banking firms, which do not bill their clients on an hourly basis. In particular, the debtor believes that the Fee Structure creates a proper balance between a fixed fee and contingency fees based on the successful consummation of a Transaction. Similar fixed and contingency fee arrangements have been approved and implemented in other large chapter 11 cases in various districts. *See, e.g., In re WCI Steel, Inc.,* Case No. 03-44662 (WTB)(Bankr. N.D. Ohio 2003)(order dated Dec. 8, 2003,

approving the retention of Jefferies & Company, Inc., as financial advisors to the debtors pursuant to sections 327(a) and 328(a) of the Bankruptcy Code); *In re NextWave Personal Communications, Inc.,* Case No. 98-21529 (ASH)(Bankr. S.D.N.Y. October 1, 2001)(order dated Oct. 1, 2001, approving the employment of UBS Warburg LLC as financial advisors for the debtors pursuant to 327(a) and 328(a) of the Bankruptcy Code); *In re Casual Male Corp.,* No. 01-414-1 (REG)(Bankr. S.D.N.Y. July 20, 2001)(Docket No. 197)(authorizing retention of Robertson Stephens, Inc. as investment bankers for debtors under section 328); *In re PSINET, Inc.,* Case No. 01-13213 (REG)(Bankr. S.D.N.Y. May 31, 2001)(order dated July 12, 2001, approving the retention of Dresdner Kleinwort Wasserstein as investment bankers and financial advisors to the debtors, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code).

26. In view of the foregoing, the debtor believes that the Fee Structure is fair and reasonable in light of (a) industry practice and prior precedent; (b) market rates charged for comparable services both in and out of the chapter 11 context; (c) the substantial experience of the GCP professionals with respect to investment banking and reorganization services; and (d) the nature and scope of work to be performed by GCP in this case.

## NOTICE

27. Notice of this motion has been given to (i) the office of the United States Trustee, Attn: Scott Goldberg, 512 U.S. Courthouse, 601 West Broadway, Louisville, KY 40202; (ii) the debtor's pre-petition lender or its counsel; and (iii) all entities that have entered notices of appearance in these proceedings as of the date hereof. <u>The debtor submits that, in light of the nature of the relief requested, no other or further notice need</u>

be given. Debtor requests that the Court set no longer than ten (10) days for any interested party to object to this motion.

## NO PRIOR REQUEST

28. No prior motion for the relief requested herein has been made to this or any other Court.

WHEREFORE, the debtor respectfully requests that the Court (i) approve the Application approving, among other things, the employment and retention of GCP as the debtor's exclusive sales and marketing agent and (ii) grant such other or further relief as the Court deems appropriate.

>AKSM HOLDINGS, INC.
>The Debtor
>
>BY /s/ Mark C. Whitlow
>    Mark C. Whitlow
>    Whitlow, Roberts, Houston & Straub, PLLC
>    mwhitlow@whitlow-law.com
>    P.O. Box 995
>    Paducah, KY 42002-0995
>    270-443-4516 (Telephone)
>    270-443-4571 (Facsimile)

## NOTICE OF ELECTRONIC FILING AND CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2010, I electronically filed the foregoing with the Clerk of the Court, and will send a copy to those parties not receiving electronic notice.

>BY /s/ Mark C. Whitlow
>    Mark C. Whitlow