# ASSET PURCHASE AGREEMENT

THIS AGREEMENT, made and entered into effective as of September 30, 2010 by and between **AKSM Holdings, Inc.**, a Kentucky corporation ("Seller"), and **ViWinTech Window & Door, Inc.**, and **Brown Real Estate Holdings, Inc.**, both Kentucky corporations (collectively, "Buyer").

WITNESSETH:

**WHEREAS,** Seller is engaged in the business of manufacturing and distributing vinyl window, and activities related thereto (the "Business"), at Seller's premises located at 2400 Irvin Cobb Drive, Paducah Kentucky (the "Premises"); and

**WHEREAS,** Owners shall, at the time of Closing, own all of the issued and outstanding capital stock of Seller; and

**WHEREAS,** Seller desires to sell to Buyer and Buyer desires to purchase from Seller substantially all of the assets of Seller relating to the Business as provided in this Agreement.

**NOW, THEREFORE,** in consideration of these premises and of the covenants, conditions, promises and in consideration of other good and valuable consideration, the receipt and sufficiency whereof are hereby acknowledged, the parties hereto mutually agree as follows:

## Section 1

## Purchase and Sale of Assets: Assumption of Assumed Contracts

1.1 <u>Intent of the Parties</u>. It is the intention of the parties that Buyer will acquire from Seller substantially all the rights and assets of Seller used in connection with the Business to enable Buyer to operate the Business after Closing.

1.2 <u>Agreement of Sale and Purchase of Business Assets</u>. Seller hereby agrees to sell, bargain, assign, transfer and convey to Buyer and Buyer hereby agrees to purchase and acquire all of the assets used in the Business (hereafter collectively referred to as the "Purchased Assets" or "Assets") (except the "Excluded Assets" as hereafter defined) on the terms and conditions set forth in this Agreement for the purchase price set forth below which shall be payable as provided in Sections 1.4 and 5.1(a) hereof

    (a) All machinery, dies, equipment, tools, attachments and parts therefor, including, but not limited to, those listed on Schedule 1.2(a) (the "Machinery and Equipment").

    (b) All fixtures, office furniture, computers, supplies and tangible personal property of every kind and nature owned or used by Seller in the Business, including, but

not limited to, those listed on Schedule 2.1(b) (the "Other Personal Properties").

(c) All vehicles, automobiles, trucks, forklifts and other vehicles owned by Seller, including but not limited to those listed on Schedule 1.2(d) (the "Vehicles").

(d) All leasehold improvements and fixtures owned or used by Seller, including, without limitation, those listed on Schedule 1.2(5) ("Leasehold Improvements").

(e) All cash on hand, including undeposited receipts, or on deposit in Seller's accounts.

(f) Accounts Receivable. All accounts receivable of Seller.

(g) Refunds and Deposits. All claims for tax refunds, prepaid expenses and deposits.

(h) All of Seller's intellectual property, including, without limitation, the intellectual property identified in Schedule 1.2(5), and the following:

    i. All software (including all data, source codes, and related documentation), belonging to or in the possession of Seller, or used by Seller in the Business;

    ii. All patents, patent applications, registrations therefor, etc.;

    iii. All copyrights, registrations and applications therefor;

    iv. All licenses granted to or by Seller;

    v. Technical documentation relating to the Assets including designs, maintenance records, service records, production data, research and development information;

    vi. All customer lists, pricing, information, business and marketing plans.

(i) All warranties and guarantees given to, assigned to or benefiting Seller regarding the acquisition, construction, design, use, operation or maintenance of the Assets.

(j) All inventories, including raw materials, work-in-process, work in excess of billings, finished goods, merchandise, supplies, and packaging materials.

1.3     Excluded Assets. Seller shall specifically retain the following assets (the "Excluded Assets"):

(a)     Assets owned by Joretta Brown, Ronnie Brown, and Gloria Bugg that are leased to seller.

(b)  Chapter 5 Bankruptcy claims

1.4     Purchase Price. The purchase price for all of the Assets shall be in the form of a credit bid of $3,718,000 by the shareholders of the seller, payable at closing in accordance with the approved Bidding and Sales Procedures ("Bidding Procedures"). The credit bid consists of the following liabilities owed from the seller to the shareholders of the buyer:

i.   Senior Secured Notes in the amount of $2,066,000 resulting from the assumption of debt from PNC bank by the shareholders of the seller;

ii.  Debtor-in-Possession loan of $667,000 owed to the Buyer by Seller;

iii. Second Mortgage interest in the property located at 2400 Irvin Cobb Drive, Paducah, Kentucky of $250,000 owed to Buyer by Seller as collateral for a post petition Debtor-in-Possession loan made in June 2010 ;

iv.  Assumption of First Mortgage Lien on Property located at 2400 Irvin Cobb Drive, Paducah Kentucky in the amount of $715,000 held by Regions Bank;

v.   Assumption of First Mortgage Lien on Machinery and Equipment located at 2400 Irvin Cobb Drive, Paducah Kentucky in the amount of $20,000 held by Regions Bank; and

vi.  The purchase price reflects the net amount due at closing and the buyer will not require post closing adjustments to working capital other than an adjustment to the purchase price due to changes in post petition payables.

1.5     Allocation of Purchase Price. The purchase price for the Assets shall be allocated to each of the Assets as mutually agreed upon by Buyer and Seller, which agreement shall be evidenced in writing prior to the Closing. Buyer and Seller agree that the allocations of the purchase price represent the fair market value allocable to each of the Assets to be purchased by Buyer hereunder, and will be arrived at by arm's length negotiations and shall be used by each party in reporting the transaction contemplated by this Agreement for federal income tax purposes.

## Section 2

## Representations, Warranties and Covenants of Seller

Seller, jointly and severally, represent and warrant to Buyer that each of the following representations and warranties are true, correct and complete as of the date hereof and as of the date of Closing, and Seller covenant and agree for the benefit of Buyer as follows:

2.1     Corporate Authority; Corporate Existence and Binding Agreement. Seller has the corporate power and authority to enter into, and perform its obligations under, this Agreement. Seller: (i) is a corporation duly organized, validly existing and in good standing under the laws of the State of Kentucky, and (ii) has the corporate power to own or lease its properties and to carry on its Business as now being conducted. Seller has taken all necessary and proper corporate action to authorize and approve this Agreement and to consummate the transactions contemplated hereby. This Agreement is valid and binding upon Seller and enforceable against Seller in accordance with its terms.

2.2     Consents or Approvals Required. No filing with or consent or approval of any third party (other than approval by the United States Bankruptcy Court for the Western District of Kentucky (the "Court") in the chapter 11 case of the Debtors (Case No. 09-51148)) is required or necessary to effect the transfer or assignment of the assets of Seller to be transferred or assigned to Buyer hereunder. There is no charter, bylaw, lease, mortgage, agreement, instrument or other restriction of any kind or character or order, judgment or decree binding upon Seller or to which any of the Assets is subject which would be breached by or would prevent the consummation of the sale of the Assets by Seller to Buyer pursuant to this Agreement and the transactions contemplated hereby.

2.3     Title to Assets. Seller, at the Closing, will transfer valid, good and marketable title to all of the Assets being sold, transferred or assigned hereunder by Seller to Buyer, free and clear of any and all liens, claims, restrictions or other encumbrances (collectively "Liens").

2.4     Litigation. There is no action, suit, litigation, arbitration, proceeding or, to the knowledge of Seller, investigation pending, or to the knowledge of Seller, threatened, against Seller or the Assets.

2.5     Employer Plans. Health benefit plans maintained by Seller for its employees are or will be currently funded in accordance with their respective terms. All accrued vacation and sick pay owed to employees of Seller as of the Closing Date will be assumed by the Buyer on the Closing Date and other employee benefits through the date of Closing will be assumed or provided by Buyer in accordance with their terms.

2.6     Taxes. Seller has timely filed all material tax returns related to the Business and has paid all taxes and other charges shown due on such tax returns. No tax deficiency is proposed or threatened against Seller, there are no tax liens upon any of the Assets, and all taxes and other assessments and levies that Seller was required by law to withhold or collect have been in all material respects duly withheld and collected, and have been paid over to the proper

governmental entity or are being held by Seller for such payment.

    2.7    Schedules of Assets and Contracts. Except for the Assets being transferred hereunder, Seller has no knowledge of any assets or contracts which are material to the Business as conducted by Seller except for any of the Excluded Assets. Seller is not a party to any contract or Agreement which is in default and, (i) no event has occurred or circumstance exists which, with the giving of notice or the lapse of time or both, would constitute a material default or an event of material default by Seller thereunder, (ii) no event has occurred or circumstance exists that, with the giving of notice or the lapse of time or both, would constitute a default or an event of default under any such contract by any other party thereto, and (iii) all rentals and other amounts due and owing by Seller or by any other party under any such contract have been paid in full, and Seller has not accepted any prepayments of any amounts owing to Seller under any such contract.

    2.8    Absence of Conflicts. The execution and delivery by Seller of this Agreement and any other instruments or documents required to be executed and delivered in connection herewith, the transfers and assignments of the Assets, and the consummation of the other transactions contemplated hereby by Seller (i) have been, or will have been by the date of Closing, authorized by such authorities or by such court of competent jurisdiction, if any, as may be required by any law applicable to Seller, (ii) to Seller's knowledge, will not violate any statute, law, ordinance, rule, regulation, judgment, decree, order, permit, approval or certification of any governmental, legislative, judicial, regulatory or administrative body, board or agency which may be applicable to Seller or any of the Assets; and (iii) assuming the Requisite Consents are obtained, will not conflict with any provision of the articles of incorporation or bylaws of Seller or, to Seller's knowledge, (with or without the giving of notice, the lapse of time, or both) result in the breach of any term or provision of, or constitute a default under, or result in the creation of any Lien against any of the Assets pursuant to any indenture, mortgage, deed of trust, contract, lease, agreement or other instrument to which Seller is a party or by which any of its properties or assets are or may be bound where the effect thereof would have a material adverse effect on the Business.

    2.9    Intellectual Property. There have been no claims made or, to the knowledge of Seller, threatened against Seller asserting the invalidity, abuse, misuse or unenforceability of any of the intellectual property owned by Seller and used in the Business, and such intellectual property and the use thereof by Seller, to its knowledge, does not conflict with or infringe upon the rights of others.

    2.10    Labor Dispute. To the best of its knowledge, there is no strike, work slowdown, grievances, claims of unfair labor practice, picketing or any other labor dispute or disturbance pending or, to the knowledge of Seller, threatened against Seller which would adversely affect the Assets or goodwill of the Business. The employees of Seller are not presently represented by, and are not seeking representation through, any union or other collective bargaining agent, and, to the Seller's knowledge, there is no union organization activity being conducted in connection with its employees. Seller has no agreements with any of its employees, except commission sales

incentives for sales personnel and employee benefits that Seller provides to its employees.

        2.13    <u>Compliance with Applicable Laws.</u> The conduct by Seller of the Business does not materially violate any law, statute, ordinance or regulation currently in effect, including, without limitation, the Internal Revenue Code of 1986, the Occupational Safety and Health Act and the National Environmental Policy Act, the Comprehensive Environmental Response, Compensation and Liability Act, the Resource Conservation and Recovery Act, the Solid Waste Disposal Act and every other environmental act or law (and the respective regulations thereunder) currently in effect, the enforcement of which would materially and adversely affect the Business or the value of the Assets.

        2.14    <u>Sufficiency of Assets.</u> The Assets to be transferred by Seller to Buyer include all of Seller's assets, including fixed assets, intangible assets, licenses, permits, contracts and rights that are owned and used by Seller in the operation of the Business, except for the Excluded Assets.

        2.15    <u>Condition of Assets and Premises.</u> The Assets and the Premises are being sold "as is."

## Section 3

## Representations, Warranties and Covenants of Buyer

Buyer represents and warrants to Seller that each of the following representations and warranties are true and correct as of the date hereof and will be true and correct as of the date of Closing, and Buyer covenants and agrees for the benefit of Seller as follows:

        3.1    <u>Authority and Binding Agreement.</u> Buyer has the power and authority to enter into and perform its obligations under this Agreement. Buyer has taken all necessary and proper action to authorize and approve this Agreement and to consummate the transactions contemplated hereby. This Agreement is valid and binding upon Buyer and enforceable against Buyer in accordance with its terms.

        3.2    <u>Existence.</u> Buyer (i) is a corporation duly organized, validly existing and in good standing under the laws of the State of Kentucky and (ii) has the power to own or lease its properties and to carry on its business as now being conducted.

## Section 4

## Conditions Precedent to Closing

        4.1    <u>Buyer's Conditions</u>. The obligation of Buyer to purchase the Assets and

otherwise consummate the transactions contemplated by this Agreement shall be conditioned upon the following:

(a) No Misrepresentations or Breaches by Seller. Seller shall have performed all of Seller's obligations hereunder to be performed by it or him under this Agreement prior to the Closing in all material respects. Each of the representations and warranties made by Seller in this Agreement or in any document delivered in connection herewith shall be true and correct on the date of the Closing in all material respects. Seller and shall provide Buyer with a certificate dated the date of Closing to the effect that there shall have been no material misrepresentations or breaches hereunder by Seller.

(b) Performance of Seller at Closing. Seller, as the case may be, shall have executed and delivered to Buyer all of the documents to be executed and delivered by Seller to Buyer at Closing as contemplated by Section 5.1 hereof.

(c) No Restraints. No action or proceeding shall have been commenced prior to or at the Closing before any court or governmental body or authority seeking to prevent the acquisition by Buyer of the Assets to be transferred under this Agreement to Buyer.

(d) Release of Liens. Seller shall have obtained, on or before the Closing Date, releases in form reasonably satisfactory to Buyer of each and every Lien pertaining to the Assets.

(e) Consents. Buyer or Seller shall have obtained, on or before the Closing Date, all of the Requisite Consents including, but not limited to, the consents and approvals which are necessary to establish that Buyer will obtain, as of the Closing Date, all necessary consents, licenses, permits, and other necessary governmental approvals necessary for Buyer to carry on the Business after Closing.

(f) No Material Adverse Change. There shall be no material adverse change in the Business, properties, Assets, operations or prospects of Seller.

(g) Evidence of Authority. Seller shall have delivered to Buyer evidence, satisfactory to Buyer, of the authority and authorization of Seller to execute and perform the transactions contemplated hereby and execute and deliver any and all agreements described or contemplated herein.

4.2 Seller's Conditions. The obligations of Seller to sell the Assets and otherwise consummate the transaction contemplated by this Agreement shall be conditioned upon the following:

(a) No Misrepresentation or Breaches by Buyer. Buyer shall have performed all of Buyer's obligations hereunder to be performed by it under this Agreement prior to

the Closing in all material respects. Each of the representations and warranties made by Buyer in this Agreement, or in any document delivered in connection herewith or therewith shall be true and correct on the date of Closings in all material respects. Buyer shall provide Seller with a certificate dated the date of Closing to the effect that there shall have been no material misrepresentations or breaches hereunder by Buyer.

    (b) <u>Performance of Buyer at Closing.</u> Buyer shall have executed and delivered to Seller all of the documents to be executed and delivered by Buyer to Seller at the Closing as contemplated in Section 5.1 hereof and shall have paid the purchase price for the Assets due at Closing.

    (c) <u>No Restraints</u>. No action or proceeding shall have been commenced prior to or at the Closing before any court or governmental body or authority commenced against Seller, seeking <u>inter alia,</u> to prevent the acquisition by Buyer of the Assets to be transferred under this Agreement.

## Section 5

## Closing, Application of Proceeds and Adjustments

5.1   <u>Closing.</u> Subject to compliance by the parties hereto with their respective obligations to be performed at or prior to the Closing and satisfaction of the respective conditions precedent to the obligations of Buyer and Seller to consummate the transaction contemplated hereby, consummation of the sale of the Assets by Seller to Buyer under this Agreement (the "Closing") shall occur on or before December 20, 2010, at 11:00 a.m. (the "Closing Date"), as specified in the Bidding and Sales Procedures, at the offices of Whitlow, Roberts, Houston & Straub, PLLC, 300 Broadway, Paducah, KY. 42002, or at such other location as the parties mutually agree, only after satisfaction of conditions precedent to Closing under Section 4 (other than performances at Closing under Sections 4.1(b) and 4.2(b)) have been satisfied . At the Closing, the following shall occur:

    (a) <u>Payment of the Down Payment</u>. Buyer will pay to the Seller, in a accordance with the Bidding and Sales Procedures set out in the motion to establish bidding and sale procedures entered September 27, 2010, the Purchase price as specified in the Asset Purchase Agreement.

    (b) <u>Conveyance Documents</u>. Seller shall execute and deliver at the Closing to Buyer such bills of sale, assignments, affidavits, certificates and other instruments of transfer in a form reasonably acceptable to Seller's and Buyer's counsel to vest in Buyer good and marketable title to the Assets.

    (c) <u>UCC-3s</u>. Seller shall deliver to Buyer such UCC-3 termination statements, or other forms of releases as may be necessary to reasonably evidence that

Seller is transferring to Buyer title to the Assets as required herein, free and clear of all liens, claims or encumbrances.

(d) <u>Compliance Certificates</u>. Seller, as one party, and Buyer, as the other party, shall certify to the other that (i) each of its or his respective representations and warranties as set forth in this Agreement were true, complete and correct in all material respects as of the respective date or dates that such representations or warranties were made under Sections 2 and 3 and are true, complete and correct as of the Closing Date (unless expressly stated to be as of an earlier date) and (ii) it or he has performed all of its or his respective obligations hereunder to be performed at or prior to the Closing in all material respects.

(e) <u>Certificate of Secretary</u>. Seller and Buyer shall deliver a Certificate of each of their respective Secretaries certifying the resolutions of their respective Boards of Directors/Governors approving the transactions contemplated by this Agreement.

(f) <u>Further Documentation</u>. Seller and Buyer shall each deliver to each other such other and further documentation as shall reasonably be requested by the other, to carry out the intent and purpose of this Agreement.

5.2 <u>Proration of Expenses and Closing Costs</u>. All liabilities, costs and expenses, including but not limited to payroll, taxes, rent and utilities, incurred in the conduct of Seller's Business shall be prorated to the Closing Date with Seller having the responsibility for any such costs and expenses arising or accruing prior to the date of Closing and Buyer having the responsibility for such costs and expenses arising or accruing on and after the date of Closing.

## Section 6

## No Assumption of Liabilities; Indemnification

6.1 <u>No Assumption of Liabilities.</u> Buyer is not assuming and shall not be obligated or liable for any of the expenses, liabilities, obligations, contracts or commitments of Seller except as expressly provided herein. If Buyer pays or performs any expense, liability, obligation, contract or commitment of Seller which Buyer did not expressly assume under this Agreement, Buyer shall be entitled to indemnification from Seller, pursuant to Sections 6.2 hereof; provided, however, that Buyer will promptly notify Seller upon receipt of any such claim and will not pay or perform on such claim if Seller provides Buyer with assurances which are, in Buyer's reasonable determination, adequate to the effect that Seller will pay or perform what is properly due to the claimant.

6.2 <u>Indemnification of Buyer.</u> Seller hereby jointly and severally agree to indemnify and hold harmless Buyer and its shareholders, directors, officers, employees and agents from, against and in respect of:

(a) Any and all losses, damages or deficiencies resulting from any and all misrepresentations or breaches of any warranty, covenant, provision or term by Seller made or contained in this Agreement or any Exhibit or Schedule or related document hereto;

(b) The assertion against Buyer of any claim by any creditor of or claimant against Seller relating to an obligation or liability of Seller or to the operation, ownership, use or maintenance of the Assets, the Business or the Premises arising prior to the Closing Date; and

(c) The reasonable costs and expenses incident to any and all actions, suits, proceedings, claims, demands, assessments or judgments in respect of any matter for which Buyer is indemnified under Sections 6.2(a) or (b) hereof, including legal and accounting fees and expenses.

6.3 <u>Indemnification of Seller.</u> Buyer does hereby agree to indemnify and hold harmless Seller, its shareholders, directors, officers, employees and agents, and Owners from, against and in respect of:

(a) Any and all losses, damages or deficiencies resulting from any and all misrepresentations or breaches of any warranty, covenant, provision or term by Buyer made or contained in this Agreement or any Exhibit hereto;

(b) The assertion against Seller of any claim by any creditor of or claimant against Buyer relating to an obligation or liability of Buyer or to the operation, ownership, use or maintenance of the Assets or the Business after the Closing Date; and

(c) The reasonable costs and expenses incident to any and all actions, suits, proceedings, claims, demands, assessments or judgments in respect of the matter for which Seller is indemnified under Section 6.3(a) or (b) hereof, including legal and accounting fees and expenses.

6.4 <u>Cooperation.</u> In the event a party hereto (the "Indemnifying Party") is indemnifying the other party hereto (the "Indemnified Party"), the Indemnified Party agrees to provide the Indemnifying Party such cooperation, information or assistance as the Indemnifying Party may reasonably request.

6.5 <u>Defense of Claims; Settlement.</u> The Indemnifying Party shall have the right to assume defense of and to settle any claim asserted by a third party against the Indemnified Party with counsel reasonably acceptable to the Indemnified Party so long as the Indemnifying Party is diligently defending such claim; provided, however, that the Indemnified Party, at its expense, shall participate in such proceeding unless there is an actual or potential material conflict of

interest (which is not waived by the parties) of the counsel for the Indemnifying Party representing both the Indemnifying Party and the Indemnified Party in which event the Indemnifying Party shall also pay the legal expenses of the Indemnified Party. The Indemnifying Party shall not settle any claim without the consent of the Indemnified Party (which consent shall not be unreasonably withheld, conditioned or delayed), unless such settlement requires no admission of liability on the part of the Indemnified Party and no assumption of any obligation or monetary payment for which the Indemnified Party has not been fully indemnified.

## Section 7

## Additional Agreements

7.1  Confidentiality. The parties hereto agree to use reasonable efforts to maintain the confidentiality of the terms of this Agreement, except as may be reasonably necessary to effect the transactions contemplated hereby.

7.2  Good Faith Effort to Close. Upon execution of this Agreement, Seller and Buyer shall proceed in good faith, and as expeditiously as practicable to close this transaction according to the timeframe outlined in the motion approving the Bidding and Sale procedure.

7.3  Access to Records; Assistance. During the period prior to the Closing, upon prior request by Buyer, Seller shall give to Buyer and its attorneys, accountants or other authorized representatives, reasonable access during normal business hours (and without interfering with Seller's business) to Seller's employees, the Assets, the Premises, and all of the books, contracts, commitments and records relating to Seller and its business, and shall furnish to Buyer during such period all such information concerning Seller, its business, the Assets and the Premises as Buyer reasonably may request and provide Buyer with reasonable administrative assistance in connection with such access and furnishing of information.

7.4  Employees.

(a)  Seller's employment of all employees of Seller shall terminate effective as of the Closing Date. Buyer may, but shall not be obligated to, offer to employ any such employee(s) of Seller.

(b)  All wages, salaries, vacation pay, sick pay, employee benefit contributions, post-retirement benefits and other fringe benefits, workers' compensation claims and all other employee benefits or employee related claims or liabilities with respect to all employees of Seller, including those who become employees of Buyer on the Closing Date, made, earned, accrued or arising exclusively during any period prior to the Closing Date, whether or not vested and whether or not reported prior thereto, shall be the responsibility and liability of Seller. All wages, salaries, vacation pay, employee benefit contributions, post-retirement benefits and other fringe benefits, worker's compensation claims and all other employee benefit or employee related claims or

liabilities, with respect to employees of Seller who become employees of Buyer on the Closing Date, made, earned, accrued or arising at or after the Closing Date shall be the responsibility of and shall be the obligation of Buyer. Buyer shall have no liability or responsibility with respect to any employees of Seller prior to the Closing Date, including without limitation, any liability or responsibility for vacation, severance, assumption of COBRA, HIPAA certification, or WARN Act penalties and if Buyer assumes any such liability, Seller and Buyer shall adjust the purchase price payable hereunder by the amount thereof.

(c) Nothing contained in this Agreement shall be deemed to create a contract of employment between Buyer and any employee of Seller, and no provision of this Agreement shall be deemed to be for the benefit of any person other than the parties to this Agreement and their respective successors and assigns.

7.5 Notices of Changes. Seller will promptly notify Buyer in the event that Seller have knowledge that any of the representations and warranties of Seller under Section 2 become materially incorrect after the date hereof as if such representations and warranties were made as of such date.

## Section 8

### Miscellaneous Provisions

8.1 Termination. This Agreement may be terminated as follows:

(a) By Buyer if Seller materially breach any representation or warranty or fail to perform any of their obligations under this Agreement at or prior to the Closing; provided, however, that Seller shall have ten (10) business days to remedy any such breach or failure following written notice by Buyer to Seller specifying such breach or failure; or

(b) By Seller if Buyer materially breaches any representation or warranty or fails to perform any of its obligations at or prior to the Closing obligations under this Agreement; provided, however, that Buyer shall have ten (10) business days to remedy any such breach or failure following written notice by Seller specifying such breach or failure.

8.2 Survival and Further Assurances. All representations and warranties made herein shall survive the Closing without any time limitation except the normal statute of limitation normally applied under state law. Seller, from time to time, at the request of the other and without further consideration, shall execute and deliver such additional instruments, including but not limited to, instruments of transfer, conveyance and assignment in addition to those delivered pursuant to Section 5 hereof, and take such other action as either may reasonably

require to more effectively carryout the intent of this Agreement, including transfer, convey and assign to and vest in Buyer and put Buyer in possession of any asset or property, to be transferred, conveyed, assigned and delivered hereunder to Buyer by Seller or otherwise to effect the transactions contemplated hereby.

8.3    Expenses. Seller and Buyer shall pay all of their own expenses (including legal and accounting) incurred in connection with the transactions contemplated hereby, whether or not the same are consummated. The parties each acknowledge to the other that they are not aware of any broker's or finder's fees due in connection with this transaction and if any such fees are due, they shall be paid by the party who committed to the payment thereof.

8.4    Waiver of Breach. The waiver by either party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party.

8.5    Multiple Counterparts. This Agreement may be executed in a number of identical counterparts, each of which for all purposes is to be deemed an original, and all of which constitute, collectively, one agreement. In making proof of this Agreement, it shall not be necessary to produce or account for more than one such counterpart.

8.6    Notices. Any notice, payment, demand or communication required or permitted to be given by the provisions of this Agreement shall be deemed to have been effectively given and received on the date personally delivered to the respective party to whom it is directed, or three (3) days after the date when deposited by registered or certified mail, with postage and charges prepaid and addressed to such party at its address below its signature to this Agreement. Any party may change its address by delivering a written change of address to all of the other parties in the manner set forth in this Section 8.6.

8.7    Entire Agreement. This Agreement constitutes the entire understanding of the parties hereto and supersedes all prior understandings, whether written or oral, between the parties with respect to the subject matter of this Agreement. No amendment, modification or alteration of the terms of this Agreement shall be binding unless in writing, dated subsequent to the date of this Agreement and duly executed by all parties.

8.8    Severability of Provisions. If any term or provision of this Agreement is illegal or invalid for any reason, such illegality or invalidity shall not affect the validity or enforceability of the remainder of this Agreement.

8.9    Headings. No heading or caption contained in this Agreement shall be considered in interpreting any of its terms or provisions.

8.10    Applicable Law. This Agreement shall be construed in accordance with the laws of the State of Kentucky, without regard to the conflict of laws applied by that state.

8.11 Attorneys' Fees. If any action at law or in equity, including an action for declaratory relief, is brought to enforce or interpret the provisions of this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees and all other costs and expenses of litigation from the other party, which amounts may be set by the court in the trial of such action or may be enforced in a separate action brought for that purpose, and which amounts shall be in addition to any other relief which may be awarded.

8.12 Parties Bound. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, personal representatives, executors, successors and assigns. Either party hereunder may assign its rights in or under this Agreement, but no such assignment shall relieve or release such party from its obligations hereunder.

IN WITNESS WHEREOF, the parties have executed this Agreement, each as of the date first above written.

**SELLER:** **AKSM Holdings, Inc.**

By: _[signature]_
Its: President
Address:    2400 Irvin Cobb Drive
            Paducah, KY

**BUYER:** **ViWInTech Window & Door Inc.**

By: _[signature]_
Its: President
Address:    2400 Irvin Cobb Drive
            Paducah, KY


**Brown Real Estate Holdings, Inc.**

By: _[signature]_
Its: President
Address:    2400 Irvin Cobb Drive
            Paducah, KY