UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY

IN RE: )
)
AKSM HOLDINGS, INC. ) Case No. 09-51148
) Chapter 11
    Debtor-in-Possession )
)

**OBJECTION OF THE UNSECURED CREDITORS' COMMITTEE TO DEBTOR'S MOTION PURSUANT TO SECTIONS 105, AND 363 OF THE BANKRUPTCY CODE FOR AN ORDER AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES**

Comes now the Official Committee of Creditors Holding Unsecured Claims in the AKSM Holdings, Inc. Estate (the "Committee"), by and through its counsel, Peter M. Gannott and the law firm of Alber Crafton, PSC, and files its Objection to a) Debtor's Motion filed on September 27, 2010 (Doc. No. 224) to Establish Bidding and Sale Procedures for the Sale of substantially all of Debtor's assets free and clear of all liens, claims, and encumbrances ("Sale Motion") and (b) the proposed Asset Purchase Agreement that the Debtor filed on October 1, 2010 (Doc. No. 227) (the "APA"). In support of this Objection, the Unsecured Creditors' Committee respectfully represents as follows.

**PRELIMINARY STATEMENT**

1. The Unsecured Creditors' Committee objects to Debtor's attempt to effectuate a foreclosure for the benefit of Insiders alone and without providing sufficient business reasons justifying the need for a section 363 sale, rather than a plan of reorganization or plan of liquidation.

2. The Sale Motion currently proposed, amounts to nothing more than a *sub rosa*, unconfirmable Chapter 11 plan that cannot be approved at this time.

1

3. The Sale Motion and APA are infirm in that they:

   a. Lack any basis for the Buyer to make the proposed credit bid, as more fully stated in the objections already on file in this case;

   b. Lack information about the potential purchasers;

   c. Fail to provide sufficient time and information to allow for a meaningful auction process;

   d. Contain overbid protections of a $50,000 break-up fee and require bidding increments of $50,000, when there is no need for this protection, since the Buyer is an insider group.

4. The Buyer cannot credit bid without proof that purchased "secured debt" actually provided them with debt, rather than equity. *In re Autostyle Plastics, Inc.,* 269 F.3d 726 (6th Cir.2001).

5. The Buyer cannot credit bid without proof that purchased "secured debt" should not be equitably subordinated in full or in part. *Benjamin v. Diamond (In re Mobile Steel Co.),* 563 F.2d 693 (5th Cir. 1977).

## FACTUAL BACKGROUND

**A. The Buyers are Insiders**

6. The Sale Motion provides that the "Buyer" will be a Stalking Horse, that includes ViWinTech Window & Door, Inc., a Kentucky corporation, The Brown Family Trust, Joretta Brown, Ronnie Brown, Gloria Buff, Jennifer Flanary and Rhonda Clapp. Joretta Brown is the Trustee for the Norvel Brown Irrevocable Trust UAD 5/23/1984 (First Amended Emergency Motion for Permission to Obtain Credit Pursuant to 11 U.S.C. §364(c)(3) filed December 16, 2009, Doc. No. 67); Sale Motion, Exhibit "A"- Bidding Procedures).

7. There is substantial overlap between the Buyer and Debtor's equity holders, which are listed as Estate of Norvel Brown, Gloria Bugg, Jennifer Flanary, Joretta Brown, Rhonda Clapp and Ronnie Brown. (Schedules filed November 30, 2010, In re AKSM Holdings, Inc. List of Equity Security Holders., Doc. No. 33)

8. The Buyer in the APA is ViWinTech Window & Door, Inc., and Brown Real Estate Holdings, Inc., both Kentucky corporations (collectively, "Buyer") (APA).

9. On September 9, 2010, ViWintech Window & Door, Inc. was incorporated in Kentucky by J. Ronald Jackson. Kentucky Office of the Secretary of State (last visited October 14, 2010).

**B. There Are No Other Known Bidders**

10. On January 20, 2010, the Debtor retained General Capital Partners LLC to market the Debtor's assets. (Application to Employ and Retain General Capital Partners LLC as Exclusive Sales and Marketing Agent for the Debtor Pursuant to 11 U.S.C. §§327(A), 328(a) and 1107 and Federal Rule of Bankruptcy Procedure 2014(a), Doc. No. 110,¶7).

11. Prior to April 2010, other parties had expressed an interest in the Debtor's assets, including HVWT, LLC and family members, but none had then made concrete offers. (Emergency Verified Motion to Extend Cash Collateral filed April 21, 2010, Doc. No. 169, ¶6; Sale Motion,¶ 5).

**C. The Sale is to Take Place on an Expedited Basis**

12. The Sale Motion provides that the auction will occur on November 15, 2010. (Sale Motion, ¶ 9).

13. A qualifying bidder must have all financing in place and close the transaction no later than December 20, 2010 (Sale Motion ¶ 9).

**D. The Buyer is Credit Bidding and Offering No Cash**

14. Buyer intends to purchase substantially all of the assets by credit bid of $3,718,000 by the shareholders of the Seller, payable at closing in accordance with the approved Bidding and Sales Procedures ("Bidding Procedures"). The credit bid consists of the following liabilities:

   a. Senior Secured Notes in the amount of $2,066,000 resulting from the assumption of debt from PNC bank by the shareholders of the seller;

   b. Debtor-in-Possession loan of $667,000 owed to Buyer by Seller;

   c. Second Mortgage interest in the property located at 2400 Irvin Cobb Drive, Paducah, Kentucky of $250,000 owed to Buyer by Seller as collateral for a post petition Debtor-in-Possession loan made in June 2010;

   d. Assumption of First Mortgage Lien on Machinery and Equipment located at 2400 Irvin Cobb Drive, Paducah Kentucky in the amount of $20,000 held by Regions Bank (APA ¶ 1.4).

**E. Overbid Protection**

15. Debtor agreed that the Buyer insider group would be paid a $50,000 break-up fee and overbid of $50,000 to compensate the Buyer for the cost of it evaluating the Debtor, etc. (Sale Motion ¶¶ 21, 22, 25).

## ARGUMENTS AND AUTHORITIES

### I. Debtor Cannot Dispose of Substantially All of Its Assets Through a Section 363 Sale.

There are two sections of the Bankruptcy Code applicable in Chapter 11 that explicitly authorize the sale of property. Section 363(b) authorizes a trustee to sell property of the estate

4

outside the ordinary course of business. Section 1123 provides that a Chapter 11 plan may include provisions (i) for transfer of all or any part of the property of the estate, Bankruptcy Code § 1123(a)(5)(A) and (ii) for sale of all or any part of the property of the estate. 11 U.S.C. §1123(a)(5). A § 363(b) sale is generally viewed as quicker. Only a motion and a hearing are required, and most courts apply a "business judgment test" to determine whether to approve the sale. By contrast, confirmation of a Chapter 11 plan usually involves (i) preparation, court approval, and distribution of a disclosure statement, (ii) voting by creditors to accept or to reject the plan, and (iii) determination by the Court of whether the plan meets statutory confirmation standards. 11 U.S.C. § 1129.

Determining the propriety of the 363 transaction requires that Debtor establish:

> A. That a valid business reason supports utilizing the sale of Debtor's assets before confirmation of a reorganization plan; and
>
> B. That the Section 363 transaction is not a "*sub rosa*" plan.

*In re General Motors Co*, 407 B.R. 463, 486, 493-494(Bankr.S.D.N.Y.2009). In this case, Debtor cannot satisfy either requirement.

### A. A Valid Business Justification to Sell the Assets Via a Section 363 Sale Rather than Through a Plan Is Not Demonstrated

Before a Section 363 sale of substantially all of Debtor's assets can proceed, the Bankruptcy Court must conclude that a valid business reason exists for such a sale as opposed to selling the assets under a liquidating plan. *Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983). The Debtor's exercise of its business judgment must be in accordance with the fiduciary duty it owes to its creditors to maximize the value of the bankruptcy estate. *In re Jillian's Entertainement Holdings*, 327 B.R. 616, 618

(Bankr.W.D.KY 2005) (The "real question is whether the Administrator has employed adequate procedures to ensure the best possible return for the estate.").

In making the determination as to whether there is a good business reason to effect a 363 Sale before confirmation, *Lionel* concluded a court should consider all of the "salient factors pertaining to the proceeding" and "act to further the diverse interests of the debtor, creditors and equity holders." *Lionel*, 722 F.2d at 1071; *Stephens Industries, Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the reasoning in *Lionel* and concluding that a sale of assets under 363 can be authorized "when a sound business purpose dictates such action."). The *Lionel* court suggested the following non-exhaustive list of factors to consider:

> (a) the proportionate value of the asset to the estate as a whole;
>
> (b) the amount of elapsed time since the filing;
>
> (c) the likelihood that a plan of reorganization will be proposed and confirmed in the near future;
>
> (d) the effect of the proposed disposition on future plans of reorganization;
>
> (e) the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property;
>
> (f) which of the alternatives of use, sale or lease the proposal envisions; and "most importantly perhaps,"
>
> (g) whether the asset is increasing or decreasing in value.

Id. at 1071. *In re General Motors Co*, 407 B.R. 463, 490 (Bankr.S.D.N.Y.2009) added several additional factors to this list:

> (h) Does the estate have the liquidity to survive until confirmation of a plan?
>
> (i) Will the sale opportunity still exist as of the time of plan confirmation?

(j) If not, how likely is it that there will be a satisfactory alternative sale opportunity, or a stand-alone plan alternative that is equally desirable (or better) for creditors? and

(k) Is there a material risk that by deferring the sale, the patient will die on the operating table?

*In re General Motors Co*, 407 B.R. at 490. In the case before this Court, these factors all weigh in favor of requiring the Debtor to proceed with a plan of reorganization/liquidation, rather than an asset sale.

As set forth in the Sale Motion, the Debtor's purported justification for a sale of substantially all of its assets before confirmation of a plan is that it cannot propose a plan that will pay the unsecured creditors. So instead it is selling all of its assets to benefit its creditors:

> After great effort, the Debtor has reluctantly concluded that it cannot propose a Plan of Reorganization that would provide any benefit to the unsecured creditors. Although Debtor's business has increased and shows modest profits in some months of operation, the Debtor lacks sufficient cash presently to distribute to its unsecured creditors now or in the future. It believes that a sale of its assets as a going concern will provide the potential for more money to the Debtor's creditors.

(Sale Motion ¶8). Instead of attempting to work with the other creditors, filing a motion to convert to a Chapter 7 so a trustee can attempt to make a recovery, or allowing the opportunity for some other party to file a plan of reorganization, Debtor is giving up.

Yet, there is insufficient information to justify Debtor's sale outside of a plan. There is sufficient time and opportunity for the Debtor to not only fully market its assets, but also seek approval of a sale through a plan, as opposed to under 11 U.S.C. § 363. Thus, the proposed sale of substantially all of the Debtor's assets is neither an exercise of the Debtor's sound business judgment nor is there a business justification for bypassing the process for a Chapter 11 plan.

## B. Debtor's Proposed Sale of Substantially All of Its Assets is a Disguised, Unconfirmable *Sub Rosa* Plan

Courts have warned that it is not appropriate to use a section 363 sale to circumvent the plan process. *See In re Braniff Airways, Inc.*, 700 F.2d at 940 (rejecting proposed sale that sought to "short circuit the requirements of Chapter 11 for confirmation of a reorganization plan by establishing the terms of the plan sub rosa in connection with a sale of assets); *In re Fremont Battery Co.*, 73 B.R. 277, 279 (Bankr. N.D. Ohio 1987) (same). Debtor should not be able to force a process whereby creditors' rights which would otherwise be preserved in a Chapter 11 plan are abrogated through a section 363 Sale. Whereas the plan process is essentially one of fairness that invites the participation, through negotiation and voting, of all creditors and interest holders, a *sub rosa* plan is a transaction or agreement that commits such a substantial part of the debtor's assets that, if the transaction were allowed, the terms of a plan of reorganization would be severely limited, if not completely predetermined.

In determining whether a settlement is a *sub rosa* plan, courts have focused on three main factors: (i) whether the transaction dictates the terms of a future plan of reorganization; (ii) whether the transaction precludes creditors from participating in the plan process; and (iii) whether the transaction disposes of all of a debtor's assets. *In re Cajun Electric Power Cooperative, Inc.*, 119 F.3d 349, 354 (5th Cir.1997).

Here, there can be no doubt that the proposed sale would dictate the outcome of these cases. The value to be received from this sale (or lack thereof) will, first and foremost, dictate a less than full satisfaction of certain administrative expense claimants, and a zero percent distribution to unsecured creditors. While the Sale might not technically "preclude" creditors from participating in the plan process, it does so in reality by making the plan process irrelevant because the funds available to creditors are set in stone. Finally, the sale disposes of all of the

estates' assets and is a *de facto* transfer of the estates' most substantial assets. For these reasons, the proposed sale is a *sub rosa* plan that cannot approved.

Further support is found in the recent opinion of Judge Steen in ***In re Gulf Coast Oil Corp.***, 404 B.R. 407, 423-424 (Bankr.S.D.Tex.2009), which identifies and discusses ten factors that bankruptcy court may consider when deciding whether to approve proposed sale of assets over objection that proposed sale is in the nature of a *sub rosa* plan. They are as follows:

1. <u>Is there evidence of a need for speed?</u> "[P]erishable assets is the archetype justification for a § 363(b) sale."

2. <u>What is the business justification for (i) the sale and sale process; and (ii) proceeding without a plan of confirmation?</u>

3. <u>Is the case sufficiently mature to assure due process?</u> "Proposals for quick sales, understood only by a few parties who would benefit from the sale, are inherently suspect."

4. <u>Is the proposed APA sufficiently straightforward to facilitate competitive bids or is the purchaser the only potential interested party?</u>

5. <u>Have the assets been aggressively marketed in an active market?</u>

6. <u>Are the fiduciaries that control the debtor truly disinterested?</u> "If entities that control the debtor will benefit, or will potentially benefit, from the sale the court must carefully consider whether it is also appropriate to defer to their business judgment."

7. <u>Does the proposed sale include all of a debtor's assets and does it include the "crown jewel"?</u> "[T]he likelihood of approval of the § 363 sale is inversely proportional to the percentage of the value of the debtor's assets that are to be sold."

8. <u>What extraordinary protections does the purchaser want?</u> "The more extensive the protections that a purchaser seeks, the less likely the Court is to approve the sale outside of a plan."

9. <u>How burdensome would it be to propose the sale as part of confirmation of a Chapter 11 plan?</u>

10. <u>Who will benefit from the sale?</u> "If one party (or a few parties selected by the "loudest creditor") will benefit from the sale, the movant should be prepared to explain why the sale should take place in a bankruptcy case and why the bankruptcy court should provide the benefits for which Congress imposed substantial requirements. . . And if the proposed transaction will not even pay all of the expenses of the bankruptcy proceeding, it would be especially difficult to understand why the purchaser should get the benefit of extraordinary bankruptcy powers and remedies for which it did not pay."

Needless-to-say, no factor here supports approval of the sale of Debtor's assets under the proposed APA.

## II. The Sale Motion and APA Fail to Establish Buyers' Right to Credit Bid

If a debtor's assets are sold under § 363(b), § 363(k) permits creditors holding a lien on the property to credit bid their allowed claims "unless the court for cause orders otherwise." 11 U.S.C. § 363(k). Courts may deny the right to credit bid where there is a bona fide dispute. ***National Bank of Commerce of El Dorado v. L.D. McMullan (In re McMullan)***, 196 B.R. 818, 835 (Bankr. W.D. Ark. 1996) (holding that a creditor would not be entitled to credit bid any of its alleged liens or security interests at a trustee's sale "because the validity of its liens and security interests [were] unresolved.").

Additionally, the "debt" is held by shareholders, so there may be facts from which this Court could conclude the investment was equity, rather than debt. *In re Autostyle Plastics, Inc.*, 269 F.3d 726, 748-749 (6th Cir. 2001). Due to the paucity of information in the Sale Motion, this cannot be determined.

Furthermore, there has been no disclosure of the amount the Buyers paid for the debt they intend to credit bid. Since they are insiders, their claim may be equitably subordinated pursuant to 11 U.S.C. § 510 in whole or in part. For example, if the Buyer's received a discount on the PNC debt, they might be limited to credit bidding up to the amount actually paid, rather than the entire debt.

### III. The Committee's Other Objections

The Committee incorporates by reference such other objects as are applicable that were previously on file in this case. Additionally, since the Committee has had so little time to analyze the issues presented by the sale Motion and APA, the Committee is reserving its rights to file further objections.

### CONCLUSION

For all the reasons set forth herein, the Committee requests that this Court DENY the Debtor's Motion for a 363 Sale, and grant the Committee any and all such further relief, at law and in equity, to which this Court may deem it entitled.

Respectfully Submitted,

*/s/ Peter M. Gannott*
Peter M. Gannott
Alber Crafton, PSC
Hurstbourne Place, Suite 1300
9300 Shelbyville Road
Louisville, KY 40222

Phone: 502-815-5000
Facsimile: 502-815-5005
pgannott@albercrafton.com

**CERTIFICATE OF MAILING**

I hereby certify that a copy of the foregoing was attempted to be filed on the 14th day of October, 2010, but due to computer-related technical difficulties, was on the morning of October 15, 2010, mailed electronically through the U.S. Bankruptcy Court's ECF system at the electronic addresses set forth in the ECF system to the Trustee, the U.S. Trustee, and all other persons receiving electronic notifications in this case.

*/s/ Peter M. Gannott*
Peter M. Gannott