IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

IN RE:
AKSM HOLDINGS, INC.                                  Case No. 09-51148

            DEBTOR                                   Chapter 11

## ORDER APPROVING MOTION TO ESTABLISH BIDDING AND SALE PROCEDURES

On September 27, 2010, AKSM Holdings, Inc., the Debtor-in-Possession, (the "Debtor")

moved to sell substantially all of the assets of the Debtor pursuant to § 363.  Creditors Royal

Group, Inc. represented by Brett Berlin, Pension Benefit Guaranty Corporation ("PBGC")

represented by Michael Maricco and Chizoba Egbuonu, Regions Bank represented by Brian

Meldrum, and the Official Unsecured Creditors Committee represented by Peter Gannott,

objected to this motion.  Sandra Freeburger, representing the Brown Family Trust (the "Stalking

Horse Bidder") and Reuel Ash representing Deceuninck North America LLC also participated in

the hearings on this motion.  The Court held a status conference on the motion on October 21,

2010 in Paducah, Kentucky.   The Court continued the hearing to November 29, 2010 in

Louisville, Kentucky.  At this time, most parties reported that their objections had been resolved.

The Official Unsecured Creditors Committee and Royal Group continued to object to the

proposed bidding and sale procedures.  The Court allowed the parties to put on evidence on the

issues.  The Debtor called David Mathis to testify.

Regions Bank, through counsel, objected to the proposed bidding and sale procedures

based on the inability of the Stalking Horse Bidder to assume Regions' debt which would have

precluded credit bidding.  Additionally, Regions objected to the bid procedures not allowing

Regions to credit bid solely for the real property located at 2400 Irvin Cobb Drive, Paducah, Kentucky, securing its debt. The Debtor, the Stalking Horse Bidder, and Regions resolved that the Stalking Horse Bidder would be allowed to credit bid with Regions' debt with the caveat that at the close of the sale, Regions Bank would receive full payment on its claim. Further, Regions would be allowed a claim in excess of its previously allowed claim of $850,274.60 based on its over-secured status. This resolution will be reflected in the amended bidding procedures and asset purchase agreement to be filed. Regions Bank will also file a separate agreed order allowing its claim.

PBGC, through counsel, objected to the proposed bidding and sale procedures based on the failure to provide a sound business purpose for the proposed sale, the failure to demonstrate that the sale was in the best interest of the estate, and that the bidding procedures did not address the assumption of the pension plan. Following the objections, the Debtor filed the affidavits of Kevin Blair and David Mathis to support its business purpose. PBGC accepted these affidavits as sufficient evidence of a business purpose. Additionally, the Debtor agreed to modify the bidding procedures to require a statement by the bidder as to its intention with regard to pension plan assumption. With these accommodations, PBGC considered its objection to the motion to be resolved.

Royal Group, Inc., through counsel, objected based on the Debtor's failure to justify the proposed sale, the break-up fee to be paid to the Stalking Horse Bidder, and requiring consultation with the secured creditor when determining qualified bidders. The Debtor agreed to remove the break-up fee from the bidding procedures. Additionally, the Debtor reduced the overbid amount from $50,000 to $20,000. While these two compromises would certainly

increase the competitiveness of the sale, Royal Group maintained its objection to the motion

based on the lack of a business justification and issues with possible violations of the absolute

priority rule.

The Official Unsecured Creditors' Committee, through counsel, objected based on the

failure to provide sufficient business justification. It characterized the Sale Motion as a *sub rosa*,

unconfirmable Chapter 11 Plan. Even with the accommodations made by the Debtor in adjusting

the proposed bidding procedures, the Committee maintained its objection.

As the parties had not resolved the issue of the business justification, the Debtor had

David Mathis testify as to the necessity of the proposed sale. Mr. Mathis is the chief financial

officer for the Debtor and performs as a general manager. The Debtor has employed Mr. Mathis

since December 7, 2009. The Debtor introduced financials for the Debtor of the current year and

projected financials for 2011. The Debtor is a manufacturer of vinyl windows and doors. The

nature of the business has some seasonal cycles which lead to significant unknowns in the future

which he characterizes as "scary." January and February tend to have lower revenues, and fixed

expenses are difficult to reduce. While there are possible cost savings not reflected in these

financials such as reduced supply costs and interest expenses, the projected revenues rely on the

sales figures remaining the same in 2011. With the uncertainty surrounding the expiring tax

credit for energy efficiency improvements made by customers to their homes, the Debtor may

face reduced sale numbers in 2011. Recognizing that the provided projections are particularly,

and probably purposefully, bleak, it is clear that the perceived value of the assets for sale will be

worth less as the company progresses into 2011. The Debtor, moreover, will not receive a nearly

$1 million cash infusion in 2011. This cash helped the Debtor weather its seasonal lows in 2010.

Without this cash, the Debtor may be forced into a liquidation at an inopportune time.

Mr. Mathis also testified, credibly, concerning other purchase proposals made to the Debtor. He determined that most of these proposals were not sufficient for the company. While these offers were rejected, the offerors have continued to express an interest in purchasing the Debtor's assets. Kevin Blair, with General Capital Partners, LLC ("GCP"), has been working as the exclusive sales and marketing agent for the Debtor since January.[1] He has clearly generated significant interest in the Debtor both for the possibility of providing financing and purchasing assets. The elimination of the break-up fee and the reduction in the overbid should level the playing field in the proposed auction. Mr. Blair will continue to market this company because under the current proposed sale, GCP will not receive its commission.

In determining whether there is a business justification, the Second Circuit lists the "relevant factors as the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value." *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983). The proposed sale incorporates a majority of the assets of the estate. This case had been pending for almost one year prior to the filing of this motion. A plan of reorganization is unlikely to be filed

---

[1]See order approving the application to employ General Capital Partners, LLC entered on February 19, 2010. (Doc #125)

in the foreseeable future, but there will not be a plan of reorganization filed if this sale proceeds.

But as the Second Circuit has said, the most important factor is to consider whether the assets are

increasing or decreasing in value. It is clear that the business of the Debtor is continuing to

decrease in value. While the Debtor may actually become profitable by the end of the year, this

speculation only provides incentive for other purchasers to evaluate the company. There is a

business justification for the sale and a timetable can be established that will result in the highest price.

Upon motion of the Debtor to establish bidding and sale procedures under 11 U.S.C.

§§ 363 and 105 and the Court having considered the objections of the parties, the testimony of

David Mathis, the entire record, and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that the amended bidding procedures to be filed by the

Debtor to reflect the representations made to this Court are hereby APPROVED; and that all

objections filed are OVERRULED.

IT IS FURTHER ORDERED that a copy of any bona fide offer received by General

Capital Partners, LLC shall be forwarded to Peter Gannott, counsel for the Official Unsecured

Creditors' Committee, and Mark Whitlow, counsel for the Debtor. This will assist in creating a

level playing field and keep all parties informed of the potential bidders. Counsel for the

Official Unsecured Creditors' Committee shall act as a disbursing agent for these offers and

distribute to interested parties; and

IT IS ALSO ORDERED that the auction sale of the Debtor's assets, which include the

assets of Aluma-Kraft, Inc., Vinyl Window Technologies, Inc., Aluma-Kraft Sales, Inc., and

Purchase Area Home Improvements, Inc., shall occur on February 7, 2011, at 10:00 a.m.

(Eastern Time) in Courtroom #2, Fifth Floor, Gene Snyder Courthouse, 601 W. Broadway,

Louisville, Kentucky.

Thomas H. Fulton
United States Bankruptcy Judge

Dated: December 2, 2010

<u>EXHIBIT "A" - FIRST AMENDED BIDDING PROCEDURES</u>

The following procedures (the "Bidding Procedures") shall govern the sale and auction of certain of the assets and/or business operations of AKSM HOLDING, INC., f/k/a Aluma Kraft, Inc. f/k/a Aluma Kraft Sales, Inc. a/k/a Vinyl Window Technologies, Inc. f/k/a Purchase Area Home Improvement, Inc. (collectively referred to as the "Debtors") to ViWinTech Window & Door, Inc., a Kentucky corporation, The Brown Family Trust, Joretta Brown, Ronnie Brown, Gloria Bugg, Jennifer Flanary and Rhonda Clapp (collectively, the "Buyer") or to any competing bidder. These Bidding Procedures have been approved and authorized by order dated December 2, 2010 (the "Procedures Order"), entered by the United States Bankruptcy Court for the Western District of Kentucky (the "Bankruptcy Court") in the chapter 11 case of the Debtors (Case No. 09-51148)), Capitalized terms, used herein but not separately defined, shall have the meanings ascribed to such terms in that certain Asset Purchase Agreement by and between Buyer and the Debtors dated October 1, 2010, as may be amended from time to time by the parties thereto (the "Agreement").

1.      <u>Property to be Sold.</u>  Pursuant to the Agreement, Buyer has agreed to purchase all of the Debtors' right, title and interest in, to and under all of the properties, assets and other rights (other than the Excluded Assets) that constitute the Purchased Assets. As provided in the Procedures Order entered by the Bankruptcy Court, the sale of the Purchased Assets (the "Asset Sale") is subject to a determination of which entity is the Winning Bidder (as defined in Section 9 below). Buyer is a Qualified Bidder (as defined in Section 3 below), and the Agreement is a Qualified Bid (as defined in Section 5 below), for all purposes under these Bidding Procedures.

2.      <u>Due Diligence.</u>  Upon receipt by Mark C. Whitlow, Whitlow, Roberts, Houston & Straub, PLLC, 300 Broadway, Paducah, KY.  42002, ("Debtors' Counsel") and Kevin Blair, General Capital Partners, LLC ("GenCap") of (i) an executed confidentiality agreement ("Confidentiality Agreement") the terms of which are acceptable to the Debtors; (ii) a completed and executed bidder information sheet (to be provided upon request), and (iii) evidence satisfactory to the Debtors that the potential bidder is reasonably likely to be able to consummate a purchase of the Purchased Assets, and if each of the materials described in subclauses (i), (ii), and (iii) are in form and substance satisfactory to the Debtors, in consultation with the Official Committee of Unsecured Creditors (the "Committee"), a potential bidder shall be provided with additional information regarding the Purchased Assets, the Debtors' operations and financial condition, and be afforded the opportunity to inspect the Purchased Assets. In addition, all reasonable efforts will be made to provide a potential bidder, who has satisfied the conditions of this Section 2, with such information as such potential bidder may determine is necessary or relevant to the formulation of its bid.

DEBTORS' COUNSEL HAS NOT PREPARED ANY OF THE INFORMATION REGARDING THE DEBTORS, OR ANY OF THEIR OPERATIONS, ASSETS OR FINANCIAL, CONDITION TO BE PROVIDED TO A POTENTIAL BIDDER IN CONNECTION WITH THE PROCEDURES SET FORTH HEREIN. CONSEQUENTLY, NO REPRESENTATION IS MADE BY THE DEBTORS' COUNSEL REGARDING THE

ACCURACY, RELIABILITY, VERACITY, ADEQUACY, OR COMPLETENESS OF ANY INFORMATION PROVIDED IN CONNECTION WITH THE BIDDING PROCEDURES. AND ALL POTENTIAL BIDDERS ARE ENCOURAGED TO CONSULT WITH THEIR OWN ADVISORS REGARDING ANY SUCH INFORMATION.

      3.     <u>Qualified Bidders</u>

      (a)     A potential bidder that satisfies the following requirements, and that the Debtors, in consultation with the Committee and any Secured Lender, determine is reasonably likely to be able to consummate a purchase of the Purchased Assets shall be considered a "Qualified Bidder." Within three (3) Business Days of each potential bidder's delivery of all of the material required in subsections (b)(i) through (b)(v) below, the Debtors shall notify such potential bidder in writing as to whether such potential bidder shall be considered a Qualified Bidder.

      (b)     Unless otherwise ordered by the Bankruptcy Court for cause shown, no bid for the Purchased Assets will be considered unless prior to or in conjunction with making such bid, the bidder delivers the following items to Debtor's Counsel:

      i.     if a potential bidder elects to conduct due diligence, an executed confidentiality agreement as provided in Section 2 of these Bidding Procedures;

      ii.     A completed and executed bidder information sheet (to be provided upon request) in form and substance satisfactory to the Debtors in their sole discretion;

      iii.     The most recent financial statements of the potential bidder, or, if the potential bidder is an entity formed for the purpose of acquiring the Purchased Assets, current financial statements of the equity holder(s) of the potential bidder, and such other financial disclosure acceptable to, and requested by, the Debtors, which information shall demonstrate the financial capability of the potential bidder to consummate the purchase of the Purchased Assets (including evidence that the bidder has adequate financing for the transaction), and to provide "adequate assurance of future performance," within the meaning of section 365(f)(2)(B) of title 11 of the United States Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code") of any executory contracts and unexpired leases to be assumed and assigned to such bidder should the potential bidder be the Winning Bidder, if the prospective bidders (or the equity holders of an acquisition entity formed to be a prospective bidder), have financial statements that are audited by outside accountants, the financial statements required hereby shall be audited financial statements. In any event, an authorized representative of the bidder shall certify that the financial statements required hereby are true and correct;

iv.     Evidence that the potential bidder has the necessary internal authorizations and approvals necessary to engage in the transaction without the consent of any entity that has not already been obtained;

v.     A cashier's check made payable to  Whitlow, Roberts, Houston & Straub, PLLC  and deposited in their escrow account,  in an amount not less than $100,000 (the Deposit ) The bidder shall forfeit the Deposit paid to Debtors if (i) a Qualified Bidder withdraws its bid or any subsequent Increased Bid (as defined in Section 8 below) before the Bankruptcy Court approves the Debtors' selection of the Winning Bidder, and/or (ii) the bidder is determined to be the Winning Bidder and (A) modifies or withdraws the bid or any subsequent increased Bid without the Debtors' consent before the consummation of the sale contemplated by the Competing Agreement (as defined in Section 5(a) below) or (B) breaches the Competing Agreement. The Deposit shall be returned to the bidder (i) if the bidder is determined not to be a Qualified Bidder or (ii) under the circumstances contemplated by Section 12 hereof; and

vi.     A written commitment that (y) if the bidder (other than the Buyer) is the Winning Bidder or the Backup Bidder, such bid shall remain open and irrevocable for a period of fifteen (15) days after the entry of the Sale Order and (z) in the event the bidder is the Backup Bidder and the Debtors notify the Backup Bidder that the Debtors have elected to sell the Purchased Assets to the Backup Bidder, such bidder shall  close within five (5) Business Days of receipt of written notice from the Debtors.

4.     Time for Submission of Bids.   Any Qualified Bidder that desires to participate in the Auction (as defined in Section 8 below) shall deliver a copy of its bid not later than 5:00 p.m., Prevailing Central Time on January 31, 2011 (the "Initial Bid Deadline") to Debtors' Counsel, Mark C. Whitlow, Whitlow, Roberts, Houston & Straub, PLLC, 300 Broadway, Paducah, Kentucky 42002;  Fax (270) 443-4571; email: mwhitlow@whitlow-law.com; The Debtors shall have the right, but not the obligation, to extend the Initial Bid Deadline once or successively, but not to a date which is less than five (5) Business Days prior to the commencement of the Auction.  In the event the Debtors elect to extend the Initial Bid Deadline, all Qualified Bidders shall be notified promptly of such extension.

5.     Form and Content of Bids. To constitute a "Qualified Bid," a bid, other than the bid of Buyer, must satisfy the following requirements:

(a)     The bid must include an executed definitive asset purchase agreement in a form consistent with that used by the Buyer for its Stalking Horse bid for the purchase of all of the Purchased Assets and assumption of the Assumed Liabilities, which shall be made upon terms and conditions substantially similar to and no less economically favorable to the Debtors than those contained in the Agreement, and must be accompanied by a form of the Agreement that specifically sets forth those amendments and modifications to the Agreement, including price, terms, agreements to be assumed, and liabilities not to be assumed, which such bidder would propose if it

were selected as the Winning Bidder (the "Competing Agreement"). All modifications or amendments to the Agreement that are contained in the Competing Agreement must he "red lined" or marked in order to be enforceable against the Debtors.

(b)     The Competing Agreement must provide for total net consideration consisting of cash or marketable securities to the Debtors' estates of not less than an amount equal to (i) the sum of $3,750,000.00, which amount equals the Purchase Price, plus the minimum overbid of $20,000.00, and which amount shall exclude post-closing adjustments that do not guarantee additional consideration to the Debtors' estate, and (ii) the assumption of all Assumed Liabilities.   (i and ii, collectively, the "Proposed Consideration"). The Proposed Consideration (other than the assumption of the Assumed Liabilities) must be comprised solely of cash or be in the form of marketable securities or a combination thereof.

(c)     The Competing Agreement must not be conditioned on the ability of the bidder to obtain financing, the outcome of unperformed due diligence by the bidder, or any other contingencies; provided, however, that a bid may be subject to the confirmation of the accuracy and completeness of the specified representations and warranties in all material respects at the closing of the Asset Sale or the satisfaction of specified conditions in all material respects at the closing of the Asset Sale. None of such conditions shall be materially more burdensome or unfavorable to the Debtors than those set forth in the Agreement (except that a condition with respect to satisfaction of Hart-Scott-Rodino compliance maybe included, if bidder determines HSR is applicable to this transaction). Notwithstanding anything herein, the Competing Agreement must provide for the closing of the Asset Sale on a date no later than the date set forth in the Agreement subject to satisfaction of all conditions to closing.

(d)     A bid will not be considered by Debtors as qualified for the Auction if (1) such bid plus Deposit is not received by Debtors in writing on or prior to the Initial Bid Deadline, or (2) such bid or other information submitted by the bidder does not contain satisfactory evidence that the person submitting it has sufficient financial wherewithal to consummate the purchase contemplated thereby.

(e)     The Competing Agreement must identify (i) those executory contracts and unexpired leases of the Debtors which the bidder wishes to have assumed by the Debtors and assigned to it, and (ii) those liabilities which the bidder intends to assume.   Also, the Competing Agreement must specify whether it plans to assume the current pension plan in effect for some current and some former employees of the debtor and its predecessor in interest.

(f)     The Competing Agreement must be accompanied by a letter affirmatively (i) setting forth the identity of the bidder, the contact information for such bidder, and full disclosure of any affiliates or insiders of the Debtors involved in such bid, (ii) stating that the bidder offers to purchase the Purchased Assets upon the terms and conditions set forth in the Competing Agreement, (iii) summarizing the proposed

consideration the bidder proposes to pay under the Competing Agreement. (iv) stating the aggregate value of the consideration the bidder proposes to pay under the Competing Agreement (which statement of value shall not be binding on the Debtors or the Bankruptcy Court), (v) stating the form of the Deposit (*i.e.*, cashier's check, cash or letter of credit) made by the bidder and (vi) stating that (y) if the bidder (other than the Buyer) is the Winning Bidder or the Backup Bidder, such bid shall remain open and irrevocable for a period of thirty (30) days after the entry of the Sale Order and (z) in the event the event the bidder is the Backup Bidder and the Debtors have elected to sell the Purchased Assets to the Backup Bidder, such bidder shall close within two (2) Business Days of receipt of written notice from the Debtors.

(g)     The foregoing materials must be received by Debtors' Counsel on or before the Initial Bid Deadline.

(h)     Credit bids are allowed by holders of a security interest or mortgage in Debtor's assets to the extent that Debtor agrees with the secured amount owed to the creditor.

6.     <u>Distribution of Qualified Bids Prior to Auction</u>.  After the Debtors determine which bids are Qualified Bids, all Qualified Bids, along with the Debtors' determination as to the value of such bids and the discount, if any, that they are applying to such bids as a result of changes to the Agreement or otherwise, will be made available to each Qualified Bidder to allow each Qualified Bidder adequate notice and opportunity to (a) discuss any questions or comments about any Qualified Bids with the Debtors, and (b) prepare an Increased Bid prior to the Auction. If no Qualified Bids other than the Agreement are received by the Initial Bid Deadline, no Auction will he conducted, and Buyer will be deemed to be the Winning Bidder. If Buyer is the Winning Bidder, the Debtors shall request at the Sale Hearing (as defined in Section 10 below) that the Bankruptcy Court approve the sale of the Purchased Assets to Buyer.

7.     <u>Notification of Opening Bid.</u>  At the commencement of the Auction, the opening bid will be the Agreement.

8.     <u>The Auction.</u>

(a)     If one or more Qualified Bids other than the Agreement are submitted in accordance with the Bidding Procedures, Debtor's Counsel will conduct an auction (the "Auction") to be held on February 7, 2011 commencing at 10:00 a.m., Prevailing Eastern Time. At the Auction, the Debtors shall have the right, in their discretion, to select the highest and best bid from Buyer or any other Qualified Bidder, subject to the resolution of any dispute by the Bankruptcy Court. The Auction shall take place at the United States Courthouse, 601 West Broadway, Louisville, Kentucky 40202 in Courtroom 2, 5th Floor (access via 7th Street elevator).  Only Qualified Bidders may

attend or participate in the Auction and they must attend the Auction in person or through an authorized representative or agent with actual authority to participate in the Auction and bind such Qualified Bidder. During the Auction, any Qualified Bidder may increase its Qualified Bid by another Qualified Bid that:

       i.     provides for cash consideration or marketable securities that exceeds by not less than $50,000 the cash consideration to be paid pursuant to the then highest Qualified Bid or Increased Bid (as defined below), if any;

       ii.     identifies specifically any other changes made to such Qualified Bidder's prior Qualified Bid; and

       iii.     satisfies the requirements of Sections 3(b) and 5 above. Any bid received from a Qualified Bidder during the Auction that satisfies the requirements set forth in subsections (a)(i) through (a)(iii) above shall constitute an "Increased Bid."

     (b)     In the event of an Increased Bid, Buyer shall be entitled to submit, successive overbids and shall be entitled, in the calculation of the amount of Buyer's overbids, to credit bid in the sum of the Break Up Fee and the Expense Reimbursement.

     (c)     The Debtors may adopt rules for bidding at the Auction that will better promote the goals of the bidding process, allow all Qualified Bidders reasonable notice and opportunity to submit Increased Bids, and are not otherwise inconsistent with any order of the Bankruptcy Court or these Bidding Procedures.

     (d)     Any Secured Lender and representatives of the Unsecured Creditors Committee may attend and consult with the Debtors at the Auction.

     (e)     The auction shall continue until there is only one offer the Debtors determines, subject to court approval, is the highest and best offer from among the Qualified Bids submitted at the Auction.

     9.     <u>Selection of Winning Bidder and Backup Bidder.</u>  At the Auction, the Debtors shall review and consider each of the Qualified Bids and the increased Bids, if any. The Debtors shall be the sole arbiters of determining the highest and best offer, and they may discount offers for additional risks associated with Competing Agreements such as delays in closing, contingencies, additional representations, etc.  The Debtors shall consult with any Secured Lender, and representatives of the Unsecured Creditors Committee during the Auction regarding the selection of the Winning Bidder and the Backup Bidder. The highest and best offer shall be determined and announced at the conclusion of the Auction. The bidder making the bid that is selected as the highest and best by the Debtors shall be considered the "Winning Bidder."  The bidder making the bid that is selected as the next highest and best bid by the Debtors shall be considered the "Backup Bidder."  The Debtors shall announce and inform each of the Qualified

Bidders of the decision regarding who is the Winning Bidder and the Backup Bidder on the record of the Auction.

10. <u>Bankruptcy Court Approval of the Winning Bidder and Backup Bidder.</u> An evidentiary hearing on all of the relief requested in the Debtors' motion (the "Sale Motion") to approve the Asset Sale and to confirm the results of the Auction (the "Sale Hearing") shall be held before the Bankruptcy Court as soon as possible.

11. <u>Failure to Consummate Purchase.</u> The Debtors and the Winning Bidder (or the Backup Bidder, as applicable) shall be authorized to effect the sale of the Purchased Assets, or any part thereof to the Winning Bidder following the entry of the Sale Order, without further order of the Bankruptcy Court. If any such failure to consummate the purchase is the result of a breach of the Agreement or the Competing Agreement by the Winning Bidder, the Deposit of such Winning Bidder (or the Backup Bidder, as applicable) shall be forfeited to the Debtors as liquidated damages in accordance with the Agreement or Competing Agreement.

12. <u>Return of Deposits.</u> Within five (5) Business Days after the entry by the Bankruptcy Court of its order (the "Sale Order"), as provided herein and in the Procedures Order, approving the Sale of the Purchased Assets to the Winning Bidder or the Backup Bidder, the Deposit(s) submitted by all Qualified Bidders shall be returned, without interest, except for those submitted by (i) the Winning Bidder, (ii) the Backup Bidder and (iii) any bidders that forfeit their Deposit under Section 3(b)(v) above. The Deposit of the Winning Bidder (or the Backup Bidder, as applicable) will be applied to the purchase price in accordance with terms set forth in the Agreement or the Competing Agreement (as applicable) if the Winning Bidder (or the Backup Bidder) closes the purchase of the Purchased Assets; provided, that if Buyer is not the Winning Bidder (or the Backup Bidder), the Deposit of the Winning Bidder (or the Backup Bidder) will be used first to pay Buyer the Break Up Fee in accordance with the Agreement. Except as otherwise provided herein, in the event the Debtors cancel the proposed sale of the Purchased Assets or withdraw the Sale Motion, the Deposit submitted by all Qualified Bidders shall be immediately returned.

13. <u>Business Judgment of the Debtors.</u> The Debtors reserve the right (a) to send copies of these Bidding Procedures together with any other information to any potential interested party; (b) to determine whether the amendments and changes contained in each Competing Agreement are acceptable as terms and conditions to sell; (c) to determine which Qualified Bid, if any, is the highest and/or otherwise best offer; and/or (d) to reject at any time prior to entry of an order of the Bankruptcy Court approving the sale to the Winning Bidder, any bid which the Debtors deem to be (i) inadequate or insufficient, or (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures.